# CHRIS DANIEL
## HARRIS COUNTY DISTRICT CLERK

NOTICE OF APPEALS
ASSIGNMENT OF COURT OF APPEALS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

4/6/2015 8:52:20 AM

CHRISTOPHER A. PRINE
Clerk

TO:     1ST COURT OF APPEALS

From:   **Deputy Clerk: MICHELLE LOPEZ**
        **Chris Daniel, District Clerk**
        **Harris County, T E X A S**

**CAUSE:** 2009-42367

**VOLUME** _____ **PAGE** _____ **OR** **IMAGE #** 63826159

**DUE** 5/9/2015            **ATTORNEY** 00790988

**NOTICE OF APPEAL HAS BEEN ASSIGNED TO THE** 1ST

**DATE JUDGMENT SIGNED:** 1/9/2015

**MOTION FOR NEW TRIAL DATE FILED** 2/6/2015

**REQUEST TRANSCRIPT DATE FILED** 4/1/2015

**NOTICE OF APPEAL DATE FILED** 4/1/2015

**NUMBER OF DAYS: ( CLERKS RECORD )** 120

**FILE ORDERED: YES** ☐ **NO** ☒ **IMAGED FILED: YES** ☒ **NO** ☐

**CODES FOR NOTICE OF APPEAL: BC, C, O**

CHRIS DANIEL
Harris County, District Clerk

By: /s/MICHELLE LOPEZ
**MICHELLE LOPEZ, Deputy**

BC      NOTICE OF APPEAL FILED
BG      NOTICE OF APPEAL FILED – GOVERNMENT
C       JUDGMENT BEING APPEALED
D -     ACCELERATED APPEAL
OA      NO CLERK'S RECORD REQUEST FILED
O       CLERK'S RECORD REQUEST FILED (W/NOTICE OF APPEAL)
NA      AMENDED NOTICE OF APPEAL

CAUSE NO. 200942367

| | | |
|---|---|---|
| **GEORGE TRUE TILLMAN** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **vs.** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| **HERCULES OFFSHORE** | § | |
| **SERVICES, LLC, and** | § | |
| **HERCULES INTERNATIONAL** | § | |
| **ASSET COMPANY, LTD.** | § | |
| | § | |
| *Defendants*. | § | **127TH JUDICIAL DISTRICT** |

## DEFENDANTS' NOTICE OF APPEAL

1.      Defendants Hercules Offshore Services, LLC and Hercules International Asset Company, Ltd. desire to appeal from the Final Judgment signed by the Court on January 9, 2015.

2.      Defendants appeal to either the First or the Fourteenth Court of Appeals.


Respectfully submitted,

**SUTHERLAND ASBILL &BRENNAN LLP**


/s/ *Sean D. Jordan*
Sean D. Jordan
   State Bar No. 00790988
Juan C. Garcia
   State Bar No. 24045914
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
[Tel.] (713) 470-6157
[Fax] (713) 654-1301

COUNSEL FOR HERCULES OFFSHORE SERVICES, LLC
AND HERCULES INTERNATIONAL ASSET COMPANY, LTD.

1

**LOCAL RULE NOTICE OF AND ASSIGNMENT OF RELATED CASE IN APPEALS**

As required by the Local Rules Relating to Assignment of Related Cases to and Transfers of Related Cases between the First and Fourteenth Courts of Appeals, I certify that the following related appeal or original proceeding has been previously filed in either the First or Fourteenth Court of Appeals:

None.

/s/ *Sean D. Jordan*
Sean D. Jordan

**CERTIFICATE OF SERVICE**

I, Sean D. Jordan, hereby certify that a copy of the foregoing document was sent this 1st day of April 2015, via FedEx Express, e-mail, or U.S. certified mail, return receipt requested, to:

Michael E. Pierce
PIERCE CHAPMAN SKRABANEK BRUERA, PLLC
3701 Kirby Drive, Suite 760
Houston, Texas 77098
*michael@pcsblaw.com*

Jason A. Itkin
ARNOLD & ITKIN, LLP
6009 Memorial Drive
Houston, Texas 77007
*jitkin@ArnoldItkin.com*

COUNSEL FOR PLAINTIFF

/s/ *Sean D. Jordan*
Sean D. Jordan

CAUSE NO. 2009-42367

| | | |
|---|---|---|
| GEORGE TRUE TILLMAN, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| HERCULES DRILLING COMPANY, | § | |
| LLC and HERCULES RIG NUMBER 16 | § | |
| | § | |
| Defendants. | § | 127th JUDICIAL DISTRICT |

## FINAL JUDGMENT

BE IT REMEMBERED that on the 1st day of October 2014, came on to be heard the above-entitled and numbered cause for trial, with due and proper notice to all parties. Plaintiff George Tillman appeared, by and through his attorneys of record, and announced ready for trial. Defendants Hercules Offshore Services, LLC and Hercules International Asset Company, Ltd. appeared, by and through their attorneys of record, and announced ready for trial.

A jury of twelve (12) good and lawful citizens of Harris County was impaneled and sworn. On October 1, 2014, the case proceeded to trial and the parties presented their evidence.

After the conclusion of the evidence, the Court submitted the questions to the jury. The jury returned and announced its verdict in open court in the presence of the parties and their counsel. The verdict as to Questions 1, 2, 3, 4, 6, 7, and 8 was rendered by 10 jurors. The jury returned a unanimous verdict as to Questions 5, 9, and 10. There being no objection, the Court accepted the verdict and ordered same duly filed. The charge of the Court and the verdict of the jury are incorporated herein for all purposes by reference.

In response to Question No. 1, the jury found that Defendant Hercules Offshore Services, LLC, was negligent and that such negligence brought about or actually caused the injury or



FILED
Chris Daniel
District Clerk

JAN 09 2015

Time:_____ 907

Harris County, Texas

By_____

Deputy

damage, in whole or in part. The jury also found that Plaintiff George Tillman was not negligent. In response to Question No. 2, the jury found that Defendant Hercules Offshore Services, LLC was 100% responsible for causing or contributing to cause the Plaintiff's injury.

In response to Question No. 3, the jury found that Defendant Hercules International Asset Company, Ltd. failed to furnish a vessel and appurtenances that were reasonably fit for their intended use thus creating an unseaworthy condition that proximately caused George Tillman's injury.

In response to Question No. 4, the jury awarded the following damages: $0.00 for medical expenses incurred in the past; $0.00 for medical care expenses that, in reasonable probability, George Tillman will incur in the future; $730,784.00 for loss of earnings sustained in the past; $1,437,121.00 for loss of earning capacity that, in reasonable probability, George Tillman will sustain in the future; $3,000,000.00 for physical pain and suffering sustained in the past; $500,000.00 for physical pain and suffering that, in reasonable probability, George Tillman will sustain in the future; $5,000,000.00 for mental anguish sustained in the past; $1,000,000.00 for mental anguish that, in reasonable probability, George Tillman will sustain in the future; $0.00 disfigurement sustained in the past; $0.00 disfigurement that in, reasonable probability, George Tillman will sustained in the future; $1,000,000.00 physical impairment sustained in the past; and $500,000.00 physical impairment that, in reasonable probability, George Tillman will sustain in the future.

In response to Question No. 5, the jury unanimously found that George Tillman is owed maintenance and/or cure.

In response to Question No. 6, the jury awarded George Tillman $254,865.00 in

2

maintenance in the past; $1,144,932.00 in maintenance in the future; $87,051.18 in cure in the past; and $166,258.43 in cure in the future.

In response to Question No. 7, the jury found that Hercules Offshore Services, LLC acted willfully or arbitrarily in failing to pay maintenance and/or cure.

In response to Question No. 8, the jury awarded George Tillman $162,624.00 in attorney's fees incurred in pursuing his maintenance and cure claim.

In response to Question No. 9, the jury unanimously found by clear and convincing evidence that Hercules Offshore Services, LLC willfully or wantonly disregarded its maintenance and cure obligation.

In response to Question No. 10, the jury unanimously awarded punitive damages in the amount of $2,000,000.00 against Hercules Offshore Services, LLC for willful or wanton disregard of its maintenance and cure obligation.

At trial the parties stipulated that Hercules Offshore Services, LLC paid $84,476.04 in past medical expenses for George Tillman and that Hercules Offshore Services, LLC would be entitled to an offset of $84,476.04 against past medical expenses awarded by the jury.

At trial the parties stipulated that Hercules Offshore Services, LLC paid $119,937.30 in salary advances for George Tillman and that Hercules Offshore Services, LLC would be entitled to an offset of $119,937.30 against past lost wages awarded by the jury.

Based on the pleadings, the evidence, the jury verdict, the stipulations of the parties, and allowing for all offsets, the Court finds that: (1) Plaintiff George Tillman is entitled to recover against Defendant Hercules Offshore Services, LLC and Hercules International Asset Company, Ltd.

3

It is therefore, ORDERED, ADJUDGED, and DECREED that Plaintiff George Tillman have and recover the sum of $16,779,222.27 from Defendants Hercules Offshore Services, LLC and Hercules International Asset Company, Ltd.

IT IS FURTHER ORDERED that Plaintiff is awarded post-judgment interest at the rate of five percent (5%) per annum from date of this judgment until paid.

All costs of court spent or incurred in this cause are adjudged against Defendants Hercules Offshore Services, LLC and Hercules International Asset Company. Ltd.

All writs and processes for the enforcement and collection of this judgment or the costs of court may issue as necessary.

All relief requested in this case and not expressly granted is denied. This judgment is final, disposes of all claims and all parties, and is appealable.

SIGNED this _____ day of ___January___, 2014.

_____
Honorable Judge Presiding

4

Respectfully submitted,

**PIERCE CHAPMAN
SKRABANEK BRUERA, PLLC**

*/s/ Michael E. Pierce*

MICHAEL E. PIERCE
State Bar No. 24039117
3701 Kirby Drive, Suite 760
Houston, Texas 77098
Telephone: (832) 690-7000
Facsimile: (832) 575-4840
E-mail: michael@pcsblaw.com

and

**ARNOLD & ITKIN LLP**

*/s/ Jason A. Itkin*

Jason A. Itkin
State Bar No. 24032461
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850
E-mail: jitkin@arnolditkin.com

**ATTORNEYS FOR PLAINTIFF**

5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was forwarded to all counsel of record, as indicated below, on the 5th day of January, 2015.

**Via Facsimile 713-654-1301 and/or E-service**
Juan C. Garcia
Sutherland Asbill & Brennan
1001 Fannin Street, Suite 3700
Houston, TX 77002

**Via Facsimile 713-654-7930 and/or E-service**
Randall M. Foret
Timothy W. Strickland
Fowler Rodriguez
4 Houston Center, Suite 1560
1331 Lamar
Houston, TX 77010
*Counsel for Defendants*

/s/ Michael E. Pierce
_____
Michael E. Pierce

CAUSE NO. 200942367

| | | |
|---|---|---|
| GEORGE TRUE TILLMAN | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | |
| | § | HARRIS COUNTY, TEXAS |
| HERCULES OFFSHORE | § | |
| SERVICES, LLC, and | § | |
| HERCULES INTERNATIONAL | § | |
| ASSET COMPANY, LTD. | § | |
| | § | |
| *Defendants.* | § | 127TH JUDICIAL DISTRICT |

### DEFENDANTS HERCULES OFFSHORE SERVICES, LLC AND HERCULES INTERNATIONAL ASSET COMPANY, LTD.'S MOTION FOR NEW TRIAL

In the alternative to their Motion for Judgment Notwithstanding the Verdict, Defendants Hercules Offshore Services, LLC and Hercules International Asset Company, Ltd. (collectively, "Hercules") respectfully move the Court to set aside the judgment rendered against them on January 9, 2015, and grant a new trial in this cause. In the further alternative, Hercules requests that the Court order a remittitur of the excessive damages awarded to Plaintiff.

## I.

### INTRODUCTION

If the Court does not render judgment in favor of Hercules notwithstanding the jury's verdict, it should nonetheless set aside the judgment rendered against Hercules on January 9, 2015, and grant a new trial in this cause. To begin with, the Court must, at a minimum, grant a new trial because it improperly un-bifurcated the trial of this case. Once Tillman requested punitive damages and Hercules timely moved for a bifurcated trial, Texas law required the Court to proceed with bifurcated proceedings. The Court's decision in the middle of trial to un-bifurcate the proceedings was erroneous, caused prejudice to Hercules, and was harmful error.

25509348.1

Further, a new trial is appropriate because the evidence is legally or, alternatively, factually insufficient to support the jury's findings against Hercules of negligence, proximate cause, that an unseaworthy condition played a substantial part in bringing about plaintiff's injuries, that plaintiff was owed Maintenance and/or Cure, and that Hercules willfully or arbitrarily failed to pay Maintenance and/or Cure. Likewise, the evidence is legally or, alternatively, factually insufficient to support any of the damages and monetary award findings made by the jury. At a minimum, and in the alternative, the Court should grant a remittitur reducing the excessive and unsupported monetary awards made by the jury to Tillman.

## II.

### STANDARD OF REVIEW

A court should sustain a complaint of legal insufficiency of the evidence, or a no-evidence point, if the record shows one of the following: (1) there is no evidence supporting the challenged element; (2) the evidence offered to prove the challenged element is no more than a mere scintilla; (3) the evidence establishes the opposite of the challenged element; or (4) the court is barred by law or the rules of evidence from considering the only evidence offered to prove the challenged element. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In reviewing a jury's verdict, the court must give "credit" to evidence favorable to the jury's finding if a reasonable juror could do so and must disregard contrary evidence unless a reasonable juror could not. *Id*. at 827.

When reviewing a complaint of factual sufficiency of the evidence, the court must consider and weigh all the evidence to determine whether the evidence supporting the finding is so weak or the finding is so contrary to the overwhelming weight of the evidence that the finding should be set aside. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

2

# III.

## GROUNDS

**A.** **Because the Court Failed to Bifurcate the Trial as Required by Section 41.009 of the Texas Civil Practice and Remedies Code, a New Trial Is Necessary.**

Under Texas Civil Practice and Remedies Code Section 41.009(a), "On motion by a defendant, the court shall provide for a bifurcated trial under this section." TEX. CIV. PRAC. & REM. CODE § 41.009(a). Hercules properly and timely invoked this provision in its Motion for Separate Trial on Exemplary Damages. Hercules again invoked this provision in its Supplemental Motion for Separate Trial on Exemplary Damages and Maintenance and Cure Issues. The motion was granted. However, this Court subsequently ruled that Hercules had "opened the door" to net worth evidence, and un-bifurcated the trial. The Court's decision was in error. There was no basis in law or the events at trial that supports the Court's decision to un-bifurcate the trial. And because the Court's decision to un-bifurcate the proceedings contravened a mandatory duty under Section 41.009(a), caused severe prejudice to Hercules, and resulted in harmful error, a new trial is required and should be granted.

### 1. Bifurcation is mandatory, not discretionary.

It is a well-established general principle of Texas law that the use of the word "shall" signifies a mandatory command. Texas Government Code Section 311.016 provides that "The following constructions apply unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute . . . 'Shall' imposes a duty." TEX. GOV'T CODE § 311.016; *see also Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) (stating that use of the word "shall" is generally construed as mandatory); *accord Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (involving

3

the assessment of attorneys' fees and stating that "[s]tatutes providing that a party 'may recover,' 'shall be awarded,' or 'is entitled to . . .'" connotes a non-discretionary act). Thus, once Hercules properly invoked CPRC Section 41.009(a), this Court was required to conduct bifurcated proceedings. Its failure to do so directly violated Section 41.009(a)'s mandatory bifurcation requirement.

## 2. The error was harmful and requires a new trial.

As the Texas Supreme Court has recognized, "evidence of a defendant's net worth, which is generally relevant only to the amount of punitive damages, by highlighting the relative wealth of a defendant, has a very real potential for prejudicing the jury's determination of other disputed issues in a tort case." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 30 (Tex. 1994).

More recently, in *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867 (Tex. 2008), the Court held that the trial court abused its discretion in allowing admission of the defendant's gross annual sales and, finding the error harmful, reversed and remanded for a new trial. In so doing, the Court explained that "The starting point for harmless-error review is the judgment." *Id*. at 871. The Court went on in *Sevcik* to observe that more actual damages were awarded by the jury than requested or supported by evidence, and that the future earnings award "was surprisingly large given the evidence." *Id*. at 872. The Court then looked to the role the erroneously admitted evidence had played in the context of the trial. The Court specifically acknowledged the particular danger for prejudice that is raised by a defendant's wealth, and concluded that:

> As already noted, a defendant's wealth has "a very real potential" for prejudice. The Legislature has deemed it so potentially prejudicial that it must be separated from the jury's deliberations regarding liability and actual damages. That concern is especially relevant here because the more impressive the wealth, the more likely it is to make an impression. Had Reliance's gross sales been $190,000 or perhaps even $1.9 million, the plaintiffs might be right that it would have been

4

> unlikely to turn jurors' heads. But sales of $1.9 *billion* are surely enough to catch any juror's attention. If evidence of gross sales is ever likely to be harmful, the evidence offered here surely must qualify.

*Id.* at 873. The court also noted that "Given that the trial focused primarily on setting damage amounts as to which jurors have few clear guideposts, it is probable that proof of Reliance's huge revenues played a crucial role on the key issue at trial." *Id.* Finally, the Court also looked to whether the plaintiff had insisted that the evidence be admitted. *Id.* at 874.

The same concerns and harmful error noted by the Texas Supreme Court in *Sevcik* are equally applicable here. Tillman's counsel elicited testimony of Hercules's relative wealth and finances during the time period at issue in the suit and in 2014. And, during closing argument, Tillman's counsel highlighted and emphasized this testimony, with argument that included: "This year Hercules is on pace to bring in $1 billion – billion with a 'B' – in revenue. What am I asking for in punitive damages? I'm going to ask for 10 percent of this number. I'm going to ask you for $914,000. For Hercules that is a drop in the bucket." What followed was an enormous jury award, particularly with regard to compensatory damages, that is unsupported by the evidence. Like *Sevcik*, this is harmful error that requires a new trial.

**B.** **There Is Legally or, Alternatively, Factually Insufficient Evidence To Support the Negligence and Proximate Cause Findings Against Hercules.**

Tillman could recover on his Jones Act claim against Hercules only if he could establish by a preponderance of the evidence the elements of Jones Act negligence, including causation— (1) personal injury in the course of his employment with Hercules; (2) negligence by Hercules or an officer, agent, or employee of Hercules; and (3) causation to the extent that Hercules' negligence was the cause "in whole or in part" of Tillman's injury. *See* FIFTH CIRCUIT'S CIVIL PATTERN JURY INSTRUCTIONS (2006) 4.4, 4.6; *Rigdon Marine Corp. v. Roberts*, 270 S.W.3d 220, 229 (Tex. App.—Texarkana 2008, pet. denied).

25509348.1

In this case, the injuries complained of by Tillman involved pneumonia and complications resulting from pneumonia, including blood clots in his lungs. According to Tillman, he contracted pneumonia while working as an Offshore Installation Manager ("OIM") for Hercules on Rig No. 16 in the waters off Qatar, during a hitch he worked in October-November 2007. Tillman further contended that he contracted pneumonia because of an unsanitary condition related to the potable water supply on the rig during that timeframe, and that Hercules' negligence caused the unsanitary condition and, in turn, his injuries. More specifically, Tillman alleged that the unsanitary condition of the potable water supply on Rig 16 during the October-November 2007 timeframe exposed him to Legionella bacteria, and that his pneumonia was caused by that particular bacteria.

But Tillman presented legally or, alternatively, factually insufficient evidence to support his claims and contentions. More specifically, Tillman failed to present legally or, alternatively, factually sufficient evidence of the following:

1: that any unsanitary condition related to the potable water supply on Rig 16 existed during the October-November 2007 timeframe;

2: that Legionella bacteria were present in the potable water supply on Rig 16 during the October-November 2007 timeframe, and that Tillman was exposed to such bacteria;

3: that Legionella bacteria, or any other unsanitary condition on Rig 16, caused Tillman's pneumonia in whole or in part.

The absence of legally or, alternatively, factually sufficient evidence as to each of these contentions asserted by Tillman, standing alone, justifies a judgment notwithstanding the verdict in favor of Hercules, or alternatively setting aside the jury findings on the negligence and causation elements of his Jones Act claim and granting a new trial. Further, the evidence presented established conclusively that, in fact, Tillman's pneumonia was contracted only after he left Rig 16 in November 2007, and therefore as a matter of law no act or omission of Hercules

6

played any part in his injuries. Alternatively, the evidence is factually insufficient to support the jury's finding that Tillman's pneumonia was contracted before he left Rig 16, and the finding should therefore be set aside.

For all of these reasons, and as explained further below, if a judgment notwithstanding the verdict is not rendered as to Tillman's Jones Act claim, and particularly Question One of the jury charge, the Court should, at a minimum, set aside the jury's answer to Question One and grant a new trial.

        **1.**       **Tillman's negligence and causation allegations turned on testimony offered by Dr. Goldstein, which should have been excluded and in any event is speculative, conclusory, and non-probative on its face.**

Tillman's negligence and causation claims against Hercules turned on the testimony of Dr. David Goldstein. Dr. Goldstein concluded that due to unsanitary conditions related to the potable water supply on Rig 16 during the October-November 2007 timeframe, Tillman was exposed to Legionella bacteria on the rig and contracted pneumonia from exposure to that bacteria. But Dr. Goldstein's testimony was inadmissible and should have been excluded by the Court. Relatedly, Dr. Goldstein's testimony is fatally flawed in a number of ways that, in addition to demonstrating its lack of admissibility, also render it non-probative on its face.

Under Texas Rule of Evidence 702, an expert's opinion is admissible if it satisfies three requirements: the expert is qualified, the opinion is sufficiently reliable under the Texas Supreme Court's opinion in *E.I. du Pont de Nemours & Co. v. Robinson* and its progeny, and the testimony assists the trier of fact. TEX. R. EVID. 702; *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). The reliability inquiry also requires satisfaction of three requirements—"namely, the expert's methodology, foundational data, and whether too great an analytical gap exists as the expert connects the foundational data or methodology with

7

the opinion." *Wilson v. Shanti*, 333 S.W.3d 909, 913 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see also Harris Cnty. Appraisal Dist. v. Houston 8th Wonder Prop., L.P.*, 395 S.W.3d 245, 253–54 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ("As to reliability, the court must examine the expert's methodology, foundational data, and whether too great an analytical gap exists between the data and methodology, on the one hand, and the expert's opinions, on the other."). Further, each opinion provided by an expert must meet these admissibility requirements. *See, e.g.*, *Broders v. Heise*, 924 S.W.2d 148, 151-53 (Tex. 1996) (concluding trial court did not abuse discretion in excluding emergency room physician's opinion concerning patient's prognosis had proper treatment been given for neurological injury); *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009) (noting that the rigorous examination under Rule 702 requires that "each material part of an expert's theory be reliable").

Hercules properly challenged Dr. Goldstein's testimony through a motion to exclude, arguing that his testimony failed to meet the requirements of Rule 702 and should be excluded. The motion was denied. At trial, Hercules renewed its objections to the admissibility of Dr. Goldstein's testimony, but its objections were overruled. The Court should reconsider these decisions and hold that, under controlling Texas law, Dr. Goldstein's testimony was inadmissible.

Dr. Goldstein's testimony is fatally flawed in a number of ways that render it inadmissible under *Robinson* and its progeny. And for the same reasons it is inadmissible, Dr. Goldstein's testimony is likewise legally or, alternatively, factually insufficient to support the jury's findings of negligence and causation, or for that matter any other jury findings in this case.

To begin with, Dr. Goldstein is unqualified to render any expert opinions on water treatment systems on rigs, or in any other type of facility. Accordingly, his conclusions on issues

8

related to the operation of the potable water systems on Rig 16 are necessarily, and as a matter of law, conclusory, speculative, and non-probative. Second, Dr. Goldstein's conclusions regarding the condition of the potable water supply on Rig 16, as well as his medical causation conclusions, lack any basis in fact, and the facts relied upon by Dr. Goldstein do not support his conclusions. His testimony therefore fails the qualification test and all of the reliability tests under Texas law, and likewise could not assist the jury in deciding this case.

By way of example, there is no diagnostic test or any other objective evidence showing that Tillman's pneumonia was caused by Legionella bacteria, and none of Tillman's treating physicians support Dr. Goldstein's conclusion that Legionella bacteria caused his pneumonia. Likewise, there is no evidence of any kind showing that Legionella bacteria were present in Rig 16's potable water system at any time, much less during the October-November 2007 timeframe. Indeed, there is no evidence establishing that there was any pneumonia-causing bacteria in the potable water system of Rig 16 during October-November 2007. There is also no evidence that any other member of the crew of Rig 16 during the October-November 2007 timeframe contracted any kind of pneumonia, much less pneumonia caused by Legionella bacteria.

When an expert lacks legally sufficient data, relies on data that does not support his conclusion, or fails to logically connect supporting data to his conclusions, he renders nothing more than conclusory, speculative opinions that are non-probative and constitute no evidence. *See, e.g.*, *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009) ("[I]f no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence…"). Because Dr. Goldstein's testimony suffered from precisely these flaws, it is conclusory, speculative, and non-probative as a matter of law.

9

Further, Dr. Goldstein's testimony runs afoul of the "Equal Inference Rule." Under the "Equal Inference Rule," when the evidence purportedly supporting an expert's causation opinion is "equally consistent" with other theories of causation, "only some of which establish that the defendant's negligence caused the plaintiff's injury," the expert "must explain to the factfinder why [his] conclusions are superior based on verifiable medical evidence, not simply the expert's opinion." *Jelinek v. Casas*, 328 S.W.3d 526, 535 (Tex. 2010).

The Texas Supreme Court's opinion in *Jelinek v. Casas*, applying the equal inference rule, is particularly instructive here. *Jelinek* was a medical malpractice case in which the plaintiff asserted that a hospital's failure to administer antibiotics caused an infection. *Id*. at 535. The plaintiff's expert conceded that the circumstantial evidence supporting his causation opinion was "equally consistent" with two other theories of causation—neither of which could be attributed to the negligence of the hospital. *Id*. Applying the equal inference rule, the *Jelinek* Court explained that it was "equally plausible that [the patient] had [an anaerobic] infection or that she did not. [The expert] opined that she did, but he did not explain why that opinion was superior to the opposite view. *Such evidence raises no more than a possibility of causation*, which is insufficient." *Id*. at 537 (emphasis added). The expert also relied on evidence of a foul smell, a finding consistent with an anaerobic infection, to support his opinion that she suffered from an undetected anaerobic infection. *Id*. at 538. The hospital, however, offered other explanations for the smell. *Id*. The *Jelinek* Court concluded that, because the evidence included "competing explanations for the smell" and only "meager" circumstantial evidence, the jury would be compelled to speculate and "could not reasonably infer an infection caused by the Hospital's negligence." *Id*. In short, in the same way that a jury may not reasonably infer one

10

fact over the other from evidence that is equally consistent with either,[1] an expert may not draw one conclusion over the other from predicate data that is equally consistent with either.

Similarly here, the medical and other evidence in this case is at least equally consistent, if not conclusively more consistent, with the finding that Tillman contracted strep pneumococcus (the most common form of pneumonia), rather than Legionella pneumonia (an atypical and unusual form of pneumonia). It is undisputed that Tillman suffered an injury in late September 2007, at his home and while off duty from Hercules, that fractured several of his ribs. It is likewise undisputed that fractured ribs cause difficulty breathing, rendering a person more susceptible to pneumonia. Finally, it is undisputed that Tillman had other risk factors for contracting pneumonia: (1) he had suffered a previous bout of pneumonia, and (2) he was a longtime smoker.

The following course of events is also established by the evidence. First, when Tillman returned to Texas following his October-November 2007 shift on Rig 16, he went to the doctor on November 14, 2007 complaining of pain on his left side—where his ribs were fractured. On November 15, 2007, an X-ray was performed on Tillman, which shows his fractured ribs but does not show any pneumonia. On November 16, Tillman reported he was feeling better. During this timeframe of November 14-16, Tillman did not show symptoms of pneumonia, and particularly had no fever. But on November 18 an X-ray was taken that shows Tillman had pneumonia. The evidence also showed that a Gram stain test of Tillman's sputum at the time was consistent with strep pneumococcus, and strep pneumonia characteristically progresses very rapidly, often in just a few days as Tillman's history reflects. Further, the X-ray on Tillman on November 18 that demonstrates pneumonia also shows empyema, which is pus in the lining of

---

1. *See, e.g.*, *id.*; *City of Keller v. Wilson*, 168 S.W.3d 802, 813-14 (Tex. 2005).

11

25509348.1

the lung. It is undisputed that Legionella pneumonia does not cause empyema, but strep pneumonia could cause it.

Thus, at a minimum, under the evidence in this case it is equally plausible, if not conclusive, that Tillman contracted strep pneumonia after returning to Texas from Rig 16 in November 2007, as opposed to Legionella pneumonia. Dr. Goldstein never explained, nor could he explain, "why [his] conclusions are superior based on *verifiable medical evidence*, not simply [his] opinion." *Jelinek*, 328 S.W.3d at 535 (emphasis added). Likewise, to the extent Dr. Goldstein's testimony merely supports the "possibility of causation" regarding Legionella bacteria on Rig 16 and Tillman's pneumonia, it is necessarily "insufficient." *Id*. at 537; *see also Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837, 840 (Tex. 2010) (per curiam) ("An expert's failure to explain or adequately disprove alternate theories of causation makes his or her own theory speculative and conclusory."). In sum, under the equal inference rule Dr. Goldstein's causation testimony, on its face, is non-probative as a matter of law.

Finally, because Dr. Goldstein is unqualified to opine on issues related to the operation of the potable water systems on Rig 16, and his medical causation conclusions lack any basis in verifiable medical evidence and fail under the equal inference rule, his testimony is, as a matter of law, conclusory, speculative, and non-probative. Likewise, Dr. Goldstein's testimony could not assist the jury in deciding the questions presented in this case, and should have been excluded. The Court should reconsider its prior decisions on this issue and hold that Dr. Goldstein's testimony is inadmissible.

In any event, for the same reasons that Dr. Goldstein's testimony is conclusory, speculative, and non-probative on its face, it is also legally or, alternatively, factually insufficient to provide support for the jury's negligence and causation findings. And because Tillman's

25509348.1

negligence and causation contentions are dependent on Dr. Goldstein's testimony, the Court should render judgment notwithstanding the verdict as to those jury findings or, at a minimum, set them aside and grant a new trial.

>    **2.    The evidence at trial regarding negligence and causation was legally or, alternatively, factually insufficient to support the jury's findings.**

Even if Dr. Goldstein's testimony is held to be admissible, his testimony and the other evidence presented at trial is legally or, alternatively, factually insufficient to support the jury findings in this case regarding negligence and causation.

To begin with, in addition to the deficiencies in Dr. Goldstein's testimony described above, *see supra* Part III.B.1, there is no direct evidence of any unsanitary condition concerning the potable water supply on Rig 16 in the October-November 2007 timeframe, much less evidence that Legionella bacteria were present in the water and caused Tillman's pneumonia. Rather, Tillman relied on legally or factually insufficient circumstantial evidence for the proposition that an unsanitary condition existed in the potable water supply at that time, and that Legionella bacteria were present and caused his pneumonia. For example, Tillman relied on the following evidence to show an unsanitary condition in Rig 16's potable water supply during October-November 2007: (1) months earlier, some seawater had accidentally been unloaded onto Rig 16; (2) over a year prior to the October-November 2007 timeframe, tests had showed the presence of other bacteria (not Legionella) in the potable water, but tests in subsequent months showed no bacteria; (3) there were missing reports of off-site water tests between June 3, 2007 and February 3, 2008; (4) there were problems with the watermaker on the rig; (5) during October-November 2007 the medical logs showed a number of workers with colds or upper respiratory infections and Tillman had similar symptoms; and (6) Tillman testified that there was no UV filter on the rig to sanitize the water.

13

Both individually and taken together, these pieces of evidence fail to provide legally or, alternatively, factually sufficient evidence to support Tillman's theory that the potable water supply on Rig 16 in the October-November 2007 timeframe was unsanitary and contained Legionella bacteria that caused Tillman's pneumonia. First, there is no connection between the evidence of a seawater unloading incident months earlier and the purported presence of Legionella bacteria in the October-November 2007 timeframe. Further, there are no off-site water test reports at any time that show the presence of Legionella bacteria in the rig's potable water supply, and all of the available off-site water tests for 2007 and early 2008 showed no bacteria of any kind in the water. In this context, neither the lack of off-site water test reports for the months surrounding the October-November 2007 timeframe, nor the earlier results showing some, non-Legionella bacteria in the water, provides probative evidence to show the presence of Legionella bacteria during the relevant timeframe. In addition, the uncontroverted testimony of Rig 16's barge engineers Johnny Coon and Brandon Nace showed that salinity and pH tests were regularly conducted on Rig 16's potable water, including during Tillman's hitch in October-November 2007, and that no problems with the water were noted during that time.

The evidence regarding problems with the watermaker on the rig is equally meaningless, given that the evidence plainly shows—indeed it is undisputed—that when the watermaker was not functioning it simply made no water, not unsanitary water. Likewise, the fact that Tillman and some others on the rig had cold symptoms or upper respiratory infections during his hitch provides no evidence that he (or anyone else) contracted pneumonia during his October-November 2007 hitch. Rather, the evidence shows that pneumonia is simply a different illness than an upper respiratory infection. Further, any notion that Tillman's cold symptoms (not pneumonia symptoms) during his hitch somehow reflected the onset of pneumonia, is belied

14

entirely by the fact that Tillman's X-ray taken immediately after his hitch (on November 15) showed no evidence of pneumonia, and Tillman had no symptoms of pneumonia (such as fever) at that time. Finally, Tillman's self-serving testimony regarding the lack of a UV filter was directly contradicted by two witnesses who, unlike Tillman, were responsible for maintaining the filter—Johnny Coon and Brandon Nace. Indeed, the testimony of Nace, Coon, and Curtis Comeaux, the night tool pusher who worked on Rig 16 during the relevant timeframe confirmed that, before being transported to living quarters, the potable water flowed through a filter, a UVGI (Ultraviolet Germicidal Irradiation) lamp, and another filter. The evidence showed that the filter and UVGI system treats water that may contain bacteria or viruses.[2]

Further, none of Tillman's treating physicians opined that his pneumonia was caused by Legionella bacteria, and at least one, Dr. Syed, confirmed that the empyema shown on his November 18 X-ray is inconsistent with Legionella pneumonia. Only Tillman's hired expert reached the conclusion that Legionella bacteria caused Tillman's pneumonia, based on no foundational or verifiable medical data. *See supra* Part III.B.1.

In sum, there is no legally or, alternatively, factually sufficient evidence to support Tillman's theory that there was an unsanitary condition affecting Rig 16's potable water that exposed him to Legionella and caused his pneumonia. Thus, judgment notwithstanding the verdict is appropriate regarding the negligence and causation questions presented in Question No.1, or alternatively these findings should be set aside and a new trial granted.

---

2. Tillman also attempted to infer that Rig 16 had a mister that may have exposed him to Legionella bacteria. But the evidence at trial demonstrated conclusively that Rig 16 did not have a water mister. Rather, both barge engineers and the night tool pusher for Rig 16 during the relevant time period confirmed that the rig actually had a Port-O-Cool evaporative cooler. The Port-O-Cool was located on the drill floor and it did not produce any mist.

25509348.1

Further, even if the evidence presented to the jury at trial is viewed by the Court as equally consistent with the absence of the facts Tillman sought to prove, the jury findings concerning negligence and causation should nonetheless be set aside and judgment notwithstanding the verdict should be rendered, or alternatively a new trial should be granted. That is to say, if, given all the evidence presented to the jury, it is equally plausible that there were no Legionella bacteria in the potable water supply on Rig 16 at the relevant time, and that Tillman contracted strep pneumonia after he returned home to Texas, the jury finding as to Question No. 1 and Tillman's Jones Act claim should be overturned, and the Court should either render judgment notwithstanding the verdict or grant a new trial.

**C.      There Is Legally or, Alternatively, Factually Insufficient Evidence To Support the Unseaworthiness Finding Against Hercules.**

The elements of an unseaworthiness claim are as follows: (1) a vessel, equipment, or crew  not reasonably fit and safe for the purposes required (*i.e.*, an unseaworthy condition); (2) that unseaworthiness actually caused or played a substantial role in causing injury; and (3) that the injury was the direct result or reasonably probable consequence of that unseaworthiness. *See* FIFTH CIRCUIT'S CIVIL PATTERN JURY INSTRUCTIONS (2006) 4.5, 4.6; *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 380 (5th Cir. 2012).

Tillman relied on the same evidence to prove both his Unseaworthiness claim and the negligence and causation issues related to his Jones Act claim. Accordingly, for the same reasons the evidence at trial is legally or, alternatively, factually insufficient to support the jury's finding as to Question No. One, it is also legally or, alternatively, factually insufficient to support the jury's finding as to Question No. Three regarding unseaworthiness. *See supra* Part III.B.

According to Tillman, he contracted pneumonia while working for Hercules on Rig No. 16 in the waters off Qatar, during a hitch he worked in October-November 2007. Tillman further

16

contended that he contracted pneumonia because of an unsanitary condition related to the potable water supply on the rig during that timeframe, and that this unseaworthy condition, in turn, caused his injuries. More specifically, Tillman alleged that the unsanitary condition of the potable water supply on Rig 16 during the October-November 2007 timeframe was an unseaworthy condition that exposed him to Legionella bacteria, and that his pneumonia was caused by this particular bacteria.

But Tillman presented legally or, alternatively, factually insufficient evidence to support his claims and contentions regarding unseaworthiness. More specifically, Tillman failed to present legally or, alternatively, factually sufficient evidence of the following:

1: that any unsanitary condition related to the potable water supply on Rig 16 existed during the October-November 2007 timeframe;

2: that Legionella bacteria were present in the potable water supply on Rig 16 during the October-November 2007 timeframe, and that Tillman was exposed to such bacteria;

3: that Legionella bacteria, or any other unsanitary condition on Rig 16, caused Tillman's pneumonia in whole or in part.

The absence of legally or, alternatively, factually sufficient evidence as to each of these contentions asserted by Tillman, standing alone, precluded him from establishing the elements of his Unseaworthiness claim. Further, however, the evidence presented established conclusively that, in fact, Tillman's pneumonia was contracted only after he left Rig 16 in November 2007, and therefore as a matter of law no act or omission of Hercules played any part in his injuries. Alternatively, the evidence is factually insufficient to support the jury's finding that Tillman contracted pneumonia on Rig 16, and the finding should therefore be set aside.

As with his Jones Act claim, Tillman's Unseaworthiness claim against Hercules turned on the testimony of Dr. David Goldstein. Dr. Goldstein concluded that due to unsanitary conditions related to the potable water supply on Rig 16 during the October-November 2007

17

timeframe, Tillman was exposed to Legionella bacteria on the rig and contracted pneumonia from exposure to that bacteria.

But as explained herein, *see supra* Part III.B.1, because Dr. Goldstein is unqualified to opine on issues related to the operation of the potable water systems on Rig 16, and his medical causation conclusions lack any basis in verifiable medical evidence and fail under the equal inference rule, his testimony is, as a matter of law, conclusory, speculative, and non-probative. For the same reasons, Dr. Goldstein's testimony could not assist the jury in answering Question No. Three regarding Tillman's Unseaworthiness claim. Thus, his testimony was inadmissible and should have been excluded as explained herein. *See supra* Part III.B.1.

Further, even if Dr. Goldstein's testimony were admissible, for the same reasons explained herein regarding the negligence and causation issues, *see supra* Part III.B.1, his evidence was also legally or, alternatively, factually insufficient to support the jury's unseaworthiness finding. And because Tillman's unseaworthiness contentions and the jury's unseaworthiness finding are dependent on Dr. Goldstein's testimony, judgment notwithstanding the verdict is appropriate on his Unseaworthiness claim. Alternatively, and at a minimum, the unseaworthiness finding should be set aside and a new trial granted.

Likewise, even if Dr. Goldstein's testimony is held to be admissible, his testimony and the other evidence presented at trial is legally or, alternatively, factually insufficient to support the jury finding in favor of Tillman on unseaworthiness. Specifically, for the same reasons explained herein regarding the negligence and causation issues, *see supra* Part III.B.2, there is no legally or, alternatively, factually sufficient evidence to support Tillman's theory that there was an unsanitary and unseaworthy condition affecting Rig 16's potable water that exposed him to Legionella and caused his pneumonia in whole or in part. Thus, judgment notwithstanding the

18

verdict is appropriate regarding the unseaworthiness question presented in Question No. Three, or alternatively this finding should be set aside and a new trial granted.

Finally, even if the evidence presented to the jury at trial is viewed by the Court as equally consistent with the absence of the facts Tillman sought to prove, the unseaworthiness finding should nonetheless be set aside and judgment notwithstanding the verdict should be rendered, or alternatively a new trial should be granted. That is to say, if, given all the evidence presented to the jury, it is equally plausible that there were no Legionella bacteria in the potable water supply on Rig 16 at the relevant time, and that Tillman contracted strep pneumonia after he returned home to Texas, the jury finding as to Question No. Three should be overturned, and the Court should either render judgment notwithstanding the verdict or grant a new trial.

**D.      There Is Legally or, Alternatively, Factually Insufficient Evidence To Support the Maintenance and Cure Findings in Favor of Tillman.**

Tillman also asserted a claim that, as a seaman, he is entitled to recover Maintenance and Cure. Maintenance and Cure is a seaman's remedy, and it is undisputed that Tillman is a seaman. Maintenance and cure provides a seaman, who is disabled by injury or illness while in the service of the ship, medical care and treatment, and the means of maintaining himself, while recuperating. *See* FIFTH CIRCUIT'S CIVIL PATTERN JURY INSTRUCTIONS (2006) 4.11.

**1.      Elements of maintenance and cure.**

A seaman is entitled to maintenance and cure even though he was not injured as a result of any negligence on the part of his employer or any unseaworthy condition of the vessel. To recover maintenance and cure, the plaintiff need show only that he suffered injury or illness while in the service of the vessel on which he was employed as a seaman, without willful misbehavior on his part. The injury or illness need not be work related, it need only occur while

25509348.1

the seaman is in the service of the ship. And maintenance and cure may not be reduced because of any negligence on the part of the seaman. *See id.*

The "cure" to which a seaman may be entitled includes the cost of medical attention, including the services of physicians and nurses as well as the cost of hospitalization, medicines and medical apparatus. However, the employer does not have a duty to provide cure for any period of time during which a seaman is hospitalized at the employer's expense. *See id.*

Maintenance is the cost of food and lodging, and transportation to and from a medical facility. A seaman is not entitled to maintenance for that period of time that he is an inpatient in any hospital, because the cure provided by the employer through hospitalization includes the food and lodging of the seaman. *See id.*

A seaman is entitled to receive maintenance and cure from the date he leaves the vessel until he reaches the point of what is called "maximum cure." Maximum cure is the point at which no further improvement in the seaman's medical condition is reasonably expected. Thus, if it appears that a seaman's condition is incurable, or that the treatment will only relieve pain but will not improve a seaman's physical condition, he has reached maximum cure. The obligation to provide maintenance and cure usually ends when qualified medical opinion is to the effect that maximum possible cure has been accomplished. *See id.*

## 2. There is legally or, alternatively, factually insufficient evidence that Tillman suffered injury or illness while in the service of Rig 16.

As explained, Tillman contends that he contracted pneumonia while working for Hercules on Rig No. 16 in the waters off Qatar, during a hitch he worked in October-November 2007. Tillman further contends that he contracted pneumonia because of an unsanitary condition related to the potable water supply on the rig during that timeframe, and that this unseaworthy condition, in turn, caused his injuries. More specifically, Tillman has alleged that the unsanitary

20

condition of the potable water supply on Rig 16 during the October-November 2007 timeframe was an unseaworthy condition that exposed him to Legionella bacteria, and that his pneumonia was caused by this particular bacteria.

But Tillman presented legally or, alternatively, factually insufficient evidence to support his claim and contentions that he contracted pneumonia while in the service of Rig 16. More specifically, Tillman failed to present legally or, alternatively, factually sufficient evidence of the following:

1: that any unsanitary condition related to the potable water supply on Rig 16 existed during the October-November 2007 timeframe;

2: that Legionella bacteria were present in the potable water supply on Rig 16 during the October-November 2007 timeframe, and that Tillman was exposed to such bacteria;

3: that Legionella bacteria, or any other unsanitary condition on Rig 16, caused Tillman's pneumonia in whole or in part.

*See supra* Part III.B-C. The absence of legally or, alternatively, factually sufficient evidence as to each of these contentions asserted by Tillman, standing alone, precluded him from establishing that he contracted pneumonia while in the service of Rig 16, and therefore that he was ever legally entitled to maintenance and cure related to his pneumonia and the subsequent medical complications from that illness. Further, however, the evidence presented established conclusively that, in fact, Tillman's pneumonia was contracted only after he left Rig 16 in November 2007. Alternatively, the evidence is factually insufficient to support the jury's finding that Tillman's pneumonia was contracted before he left Rig 16, and the finding should therefore be set aside. For this additional reason, and as a matter of law, Tillman was never legally entitled to maintenance and cure related to his pneumonia and the subsequent medical complications from that illness.

25509348.1

For these reasons, a judgment notwithstanding the verdict should be rendered as to Question No. Five of the jury charge, holding that the evidence is legally insufficient to support the jury's finding that Tillman is owed Maintenance and/or Cure. Alternatively, the finding as to Question No. Five should be set aside because the evidence at trial is factually insufficient to support it, and a new trial should be granted.

Additionally, because the evidence is legally or factually insufficient to support the jury's finding that Tillman is owed Maintenance and/or Cure, it also cannot support the jury's findings that Hercules willfully, wantonly, or arbitrarily failed to meet maintenance or cure obligations as to Tillman. Accordingly, a judgment notwithstanding the verdict should also be rendered as to Question Nos. Seven and Nine of the jury charge, holding that the evidence is legally insufficient to support the jury's findings that Hercules willfully, wantonly, and arbitrarily failed to meet maintenance and cure obligations to Tillman. Alternatively, these findings should be set aside because the evidence at trial is factually insufficient to support them, and a new trial should be granted.

**3.     There is factually insufficient evidence to show that Hercules willfully, arbitrarily, and/or wantonly failed to pay Maintenance and Cure.**

Finally, even if the evidence were otherwise sufficient to demonstrate that Tillman was owed maintenance and/or cure, there is factually insufficient evidence that any failure of Hercules to so provide was willful, arbitrary, and/or wanton. As such, the jury's findings as to Questions Nos. Seven and Nine should be set aside and a new trial granted.

Specifically, it is uncontroverted that Hercules went beyond its legal obligations by paying Tillman his full salary from 2007 through April 2009. And the evidence at trial showed that Hercules eventually stopped paying maintenance and cure only because it reasonably interpreted a letter from Tillman's treating physician as stating that Tillman had reached

22

maximum medical improvement. As such, even assuming the Court concludes that evidence supports the jury's finding that Tillman was owed maintenance and cure, the evidence is insufficient to show that any failure to pay maintenance and cure was willful, arbitrary, and/or wanton.

**E.     There Is Legally or, Alternatively, Factually Insufficient Evidence To Support the Jury's Findings on Damages and Attorneys' Fees.**

**1.     Because the evidence at trial was legally or, alternatively, factually insufficient to support any of the predicate jury findings underlying the award of monetary damages and attorneys' fees to Tillman, the jury's monetary award findings must likewise be overturned.**

The jury also made findings on four questions relating to the amounts of various monetary awards that should be made to Tillman for his claims. Question No. Four awarded various amounts of compensatory damages to Tillman premised on the jury's answers in Tillman's favor on the Jones Act and Unseaworthiness claims (Question No. One and Question No. Three). The items of compensatory damages awarded included loss of earnings, physical pain and suffering, mental anguish, disfigurement, and physical impairment. Question No. Six awarded amounts of money to Tillman for maintenance and cure, and was necessarily predicated on the jury's finding in favor of Tillman that he was owed maintenance and cure (Question No. Five). Question No. Eight awarded an amount of money to Tillman for attorneys' fees he incurred in pursuing his maintenance and cure claim, and was necessarily predicated on the jury's finding in favor of Tillman that Hercules acted willfully or arbitrarily in failing to pay maintenance and cure (Question No. Seven). Finally, Question No. 10 awarded punitive damages to Tillman and against Hercules, and was necessarily predicated on the jury's finding in favor of Tillman that there was clear and convincing evidence that Hercules willfully or wantonly disregarded its maintenance and cure obligations (Question No. Nine).

25509348.1

As explained herein, *see supra* Part III.B-D, there is legally or, alternatively, factually insufficient evidence to support any of the jury findings on Tillman's Jones Act, Unseaworthiness, and Maintenance and Cure claims underlying the monetary awards to Tillman (Questions One, Three, Five, Seven, and Nine). Accordingly, judgment notwithstanding the verdict should be entered in Hercules' favor as to each of the liability and causation questions on Tillman's Jones Act, Unseaworthiness, and Maintenance and Cure claims, or alternatively those findings should be set aside and a new trial granted (Questions One, Three, Five, Seven, and Nine). *See supra* Part III.B-D.

If judgment notwithstanding the verdict is entered in Hercules' favor as to each of these claims and jury findings (Questions One, Three, Five, Seven, and Nine), or if the findings are set aside on factual sufficiency grounds, there will be no legal basis for Tillman to recover any award of compensatory or punitive damages, nor can he recover attorneys' fees associated with pursuing his maintenance and cure claim. In other words, because there is legally or, alternatively, factually insufficient evidence to support these predicate jury finding(s) underlying each monetary award finding, there is likewise legally or, alternatively, factually insufficient evidence to support the jury's corresponding answers to Question Nos. Four, Six, Eight, and Ten, awarding damages and attorneys' fees to Tillman. Thus, judgment notwithstanding the verdict should be entered in Hercules' favor as to each of the monetary award questions on Tillman's Jones Act, Unseaworthiness, and Maintenance and Cure claims (Question Nos. Four, Six, Eight, and Ten), or alternatively those findings should be set aside and a new trial granted.

25509348.1

**2.** **In any event, the evidence at trial was legally or factually insufficient to support the compensatory damages found by the jury in answer to Question Number Four.**

Leaving aside the predicate jury findings underlying the damage awards, the evidence at trial—if not legally insufficient—is factually insufficient to support the damages award in Question No. 4. First, Tillman's evidence is factually insufficient to support the jury's findings as to lost earning capacity. In order to establish lost earning capacity, Tillman relied on the testimony of Dr. Kenneth McCoin. But Dr. McCoin's testimony was predicated on the assumption that complications from Tillman's bout with pneumonia meant that Tillman could not work. That assumption is disproved by at least the overwhelming weight of the evidence at trial. Further, because it failed to meet Rule 702's requirements, Dr. McCoin's testimony should have been excluded. In this regard, Hercules timely filed a motion to exclude Dr. McCoin's testimony, which was denied. As described herein, because Dr. McCoin's conclusions are unsupported by foundational data, they are inherently unreliable and could not assist the trier of fact. The Court should reconsider its decision and hold that Dr. McCoin's testimony is inadmissible.

But even if admissible, Dr. McCoin's testimony provides legally or factually insufficient evidence to support Tillman's lost earning contentions. It is undisputed that Tillman was paid his full salary by Hercules from the time he contracted pneumonia in 2007 until April 2009. Contrary to Dr. McCoin's assumption, Tillman's treating physicians confirmed that the complications from Tillman's bout of pneumonia have not prevented him from working at any time between April 2009 and the present. The evidence also showed conclusively that Tillman has substantial oilfield experience, but that he has made no effort to look for work (of any kind) since his employment with Hercules ended in April 2009. Alternatively, the overwhelming

25

weight of the evidence showed that Tillman has substantial oilfield experience, but that he has made no effort to look for work (of any kind) since his employment with Hercules ended in April 2009. Therefore, the jury's answer to Question No. 4(d) is legally or factually insufficient.

Similarly, as the Court correctly charged the jury, a person who claims damages from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate—to avoid or minimize those damages. And a plaintiff may not recover for any item of damage that he could have avoided through reasonable effort. But, as described above, Tillman's own evidence affirmatively and conclusively establishes that he failed to make a reasonable effort, or indeed any effort, to find work outside of Hercules. Alternatively, the overwhelming weight of the evidence establishes that he failed to make a reasonable effort, or indeed any effort, to find work outside of Hercules. In addition, despite relying on theories of mental anguish, depression, and anxiety to establish damages, Tillman has refused to seek the assistance of a therapist or psychiatrist. Notably, Tillman's own witnesses, including his expert Dr. Gonzalez, acknowledged that it would be helpful for Tillman to do so.

Thus, the conclusive or overwhelming weight of evidence presented at trial reflecting Tillman's decision to make no attempt to mitigate his lost earnings and earning capacity over the last six years precludes the jury findings awarding him past loss of earnings and loss of earning capacity in the future. Likewise, the conclusive or overwhelming weight of evidence presented at trial showing his failure to seek help for his mental anguish precludes the substantial jury award of mental anguish damages. As such, there is legally or factually insufficient evidence to support the jury's answers to Question Nos. 4(c), 4(d), 4(g), and 4(h).

Finally, the awards of damages for mental anguish, physical pain and suffering, and physical impairment are plainly excessive in light of the evidence. The jury awarded Tillman a

26

total of $11 million in such damages, including $5 million in past mental anguish. Courts consider awards of mental anguish or pain and suffering in light of the specific facts of each case and a comparison to awards in similar cases. *See e.g.*, *HCRA of Tex., Inc. v. Johnston*, 178 S.W.3d 861 (Tex. App.—Fort Worth 2005, no pet.). Under this analysis, the jury's award cannot be upheld. The totality of the testimony in this case is factually insufficient to support Tillman's entitlement to $11 million in non-economic damages. *Cf.*, *Kirksey v. P & O Ports Tex., Inc.*, 488 F.Supp.2d 579, 587–89 (S.D. Tex. 2007) (awarding $750,000 in past and future subjective losses where plaintiff suffered horrific accident, underwent surgeries, including amputation of his right leg, experienced pain, required extensive and intensive physical therapy and analgesic care, required a substantial medical regimen, including permanent use of Coumadin, and suffered significant lifetime disability restricting him to sedentary work).

For all of these reasons, if the Court does not grant judgment notwithstanding the verdict, the jury's answers to Question Nos. 4(c), 4(d), 4(g), and 4(h) should be set aside, and a new trial granted on these issues. Alternatively, the Court should enter an order of remittitur regarding the damages awarded in these findings. *See infra* Part III.F.

F.     **Alternatively, and at a Minimum, the Court Should Enter an Order of Remittitur Reducing the Excessive Monetary Awards Made to Tillman.**

As described above, *see supra* Part III.B-E, if the Court does not grant judgment notwithstanding the verdict, the Court should grant a new trial because Tillman's evidence pertaining to liability and damages is legally or, alternatively, factually insufficient. However, at a minimum, the Court should order a remittitur. "It is a well-established practice in Texas courts to condition the granting of a new trial upon compliance with an order of remittitur." *City Nat'l Bank in Wichita Falls v. Jacksboro Nat'l Bank*, 602 S.W.2d 511, 511–12 (Tex. 1980); *see also* TEX. R. CIV. P. 315 (permitting remittitur). Trial courts order remittitur when the evidence is

27

factually insufficient to support the verdict. *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987).

Here, Tillman's evidence—if not legally insufficient—is factually insufficient to support the damages award. First, Tillman's evidence is factually insufficient to support the jury's findings as to lost earning capacity. In order to establish lost earning capacity, Tillman relied on the testimony of Dr. Kenneth McCoin. As explained herein, Dr. McCoin's testimony should have been excluded. *See supra* Part III.E.2. But even if admissible, Dr. McCoin's testimony fails to support the lost earning damage awards. Dr. McCoin's testimony was predicated on the assumption that complications from Tillman's bout with pneumonia meant that Tillman could not work. However, the evidence demonstrates otherwise. Contrary to Dr. McCoin's assumption, Tillman's treating physicians confirmed that Tillman was not prevented from working. The evidence also showed conclusively that Tillman has substantial oilfield experience, but that he has made no effort to look for work (of any kind) since his employment with Hercules ended in April 2009. Alternatively, the overwhelming weight of the evidence establishes that he failed to make a reasonable effort, or indeed any effort, to find work outside of Hercules. Therefore, the jury's answer to Question No. 4(d) is legally or factually insufficient.

Similarly, as the Court correctly charged the jury, a person who claims damages from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate—to avoid or minimize those damages. And a plaintiff may not recover for any item of damage that he could have avoided through reasonable effort. But, as described above, Tillman's own evidence affirmatively establishes that he failed to make a reasonable effort, or indeed any effort, to find work outside of Hercules.

28

In addition, despite relying on theories of mental anguish, depression, and anxiety to establish damages, Tillman has refused to seek the assistance of a therapist or psychiatrist. Notably, Tillman's own witnesses, including his expert Dr. Gonzalez, acknowledged that it would be helpful for Tillman to do so.

Thus, the conclusive or overwhelming weight of evidence presented at trial reflecting Tillman's decision to make no attempt to mitigate his lost earnings and earning capacity over the last six years precludes the jury findings awarding him past loss of earnings and loss of earning capacity in the future. Likewise, his failure to seek help for his mental anguish precludes the substantial jury award of mental anguish damages. As such, there is legally or factually insufficient evidence to support the jury's answers to Question Nos. 4(c), 4(d), 4(g), and 4(h).

In any event, the award of damages for mental anguish, physical pain and suffering, and physical impairment are excessive in light of the evidence. Here, the jury awarded Tillman a total of $11 million in such damages, including $5 million in past mental anguish. Courts consider awards of mental anguish or pain and suffering in light of the specific facts of each case and a comparison to awards in similar cases. *See e.g.*, *HCRA of Tex., Inc. v. Johnston*, 178 S.W.3d 861 (Tex. App.—Fort Worth 2005, no pet.). Under this analysis, the jury's award cannot be upheld. The totality of the testimony in this case fails to support Tillman's entitlement to $11 million in non-economic damages. *Cf.*, *Kirksey*, 488 F.Supp.2d at 587–89.

Specifically, and in the alternative to its request for judgment notwithstanding the verdict and for a new trial, Hercules requests that the Court order a remittitur reducing the monetary awards made to Tillman as follows. As to Question No. 4, Tillman should receive no award of money for loss of earnings or mental anguish (Questions 4(c), 4(d), 4(g) and 4(h)), he should

29

receive no more than $200,000 for pain and suffering in the past and $50,000 for pain and suffering in the future (Questions 4(e) and 4(f)), and he should receive no more than $50,000 for physical impairment in the past and $50,000 for physical impairment in the future (Questions 4(k) and 4(l)). Because the evidence is factually insufficient to support any of the maintenance and cure monetary awards, the Court should hold that Tillman is entitled to no monetary award as to Question Nos. Six, Eight, and Ten.

## IV.

## CONCLUSION

In the alternative to their Motion for Judgment Notwithstanding the Verdict, and for the foregoing reasons, Hercules respectfully requests that the Court grant this Motion, vacate the judgment dated January 9, 2015, and grant a new trial, or alternatively, enter an order of remittitur reducing the monetary award made to Plaintiff. Hercules further requests that the Court grant to Hercules such other and further relief to which it is justly entitled.

Respectfully submitted,

**SUTHERLAND ASBILL & BRENNAN LLP**

/s/ *Juan C. Garcia*
Juan C. Garcia (SBN #24045914)
Sean D. Jordan (SBN #00790988)
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6157
Facsimile: (713) 654-1301

**FOWLER RODRIGUEZ**

/s/ *Randall M. Foret*
Randall M. Foret (SBN #07256575)
Timothy W. Strickland (SBN #19396298)
4 Houston Center, Suite 1560

30

25509348.1

1331 Lamar, Suite 1560
Houston, Texas 77010
Telephone: (713) 654-1560
Facsimile: (713) 654-7930

COUNSEL FOR HERCULES DEFENDANTS

## CERTIFICATE OF SERVICE

I, Juan C. Garcia, hereby certify that a copy of the foregoing document was sent this 6th day of February 2015, via U.S. certified mail, return receipt requested, to:

Michael E. Pierce
PIERCE CHAPMAN SKRABANEK BRUERA, PLLC
3701 Kirby Drive, Suite 760
Houston, Texas 77098
*michael@pcsblaw.com*

Jason A. Itkin
ARNOLD & ITKIN, LLP
6009 Memorial Drive
Houston, Texas 77007
*jitkin@ArnoldItkin.com*

/s/ *Juan C. Garcia*
Juan C. Garcia

31

```
JUC8H (NR4#)    JUSTICE INFORMATION MANAGEMENT SYSTEM    APR 06, 2015(C1)
INT6510              CIVIL CASE INTAKE              OPT: _____  -  INT
                   GENERAL PARTY INQUIRY            PAGE:   1  -    2

CASE NUM: 200942367__ PJN> __  TRANS NUM: _____ CURRENT COURT: 127 PUB? _
CASE TYPE: JONES ACT CASE                 CASE STATUS: CASE ON APPEAL
STYLE: TILLMAN, GEORGE TRUE               VS HERCULES DRILLING COMPANY LLC
=============================================================================
                   **** INACTIVE PARTIES ****
  PJN  PER/CONN COC  BAR        PERSON NAME             PTY   ASSOC. ATTY
  NUM   NUMBER                                          STAT
_    00010-0001 DEF 24045914 HERCULES INTERNATIONAL ASSET C    GARCIA, JUAN
_    00009-0001 DEF 07256575 HERCULES OFFSHORE SERVICES LLC    FORET, RANDAL
_    00008-0001 AGT          HERCULES INTERNATIONAL ASSET C
_    00007-0001 DEF 24043513 HERCULES INTERNATIONAL ASSET C    DEMARCAY, LAW
_    00007-0001 PAD 07256575 FORET, RANDALL M.
_    00007-0001 PAD 19396298 STRICKLAND, TIMOTHY W.
_    00006-0001 DEF 24045914 HERCULES OFFSHORE SERVICES LLC    GARCIA, JUAN
_    00006-0001 PAD 19396298 STRICKLAND, TIMOTHY W.

==> (16) CONNECTION(S) FOUND
1=ACTIVE      2=ATY. INQ.   3=ACT.ENTRY   4=ISS. SERV.  5=DOC. INQ.
6=CASE INQ.   7=BACKWARD    8=FORWARD     9=PTY. ADDR.  10=REFRESH   11=HELP
```

```
JUC8H (NR4#)    JUSTICE INFORMATION MANAGEMENT SYSTEM     APR 06, 2015(C1)
INT6510                     CIVIL CASE INTAKE              OPT: _____  -  INT
                         GENERAL PARTY INQUIRY            PAGE:   2  -    2

CASE NUM: 200942367__ PJN> __  TRANS NUM: _____ CURRENT COURT: 127 PUB? _
CASE TYPE: JONES ACT CASE                   CASE STATUS: CASE ON APPEAL
STYLE: TILLMAN, GEORGE TRUE              VS HERCULES DRILLING COMPANY LLC
========================================================================
                      **** INACTIVE PARTIES ****
  PJN   PER/CONN COC  BAR       PERSON NAME              PTY   ASSOC. ATTY
  NUM    NUMBER                                          STAT
 _    00005-0001 DEF 07256575 HERCULES OFFSHORE SERVICES LLC   FORET, RANDAL
 _    00004-0001 AGT          HERCULES DRILLING COMPANY LLC
 _    00003-0001 DEF          HERCULES RIG NUMBER 16
 _    00002-0001 DEF          HERCULES DRILLING COMPANY LLC
 _    00001-0001 PLT 00797258 TILLMAN, GEORGE TRUE             POST, RUSSELL
 _    00001-0001 PAP 24039117 PIERCE, MICHAEL E.
 _    00001-0001 PAP 24032461 ITKIN, JASON A.
 _    00001-0001 PAP 24039117 PIERCE, MICHAEL E.

==> (16) CONNECTION(S) FOUND
1=ACTIVE      2=ATY. INQ.   3=ACT.ENTRY   4=ISS. SERV.  5=DOC. INQ.
6=CASE INQ.   7=BACKWARD    8=FORWARD     9=PTY. ADDR.  10=REFRESH   11=HELP
```